1
2
3
4
5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF CALIFORNIA

7
                                        | 1:06-cv-00900 OWW WMW
8   RICHARD BYRD,                       |
                                        | MEMORANDUM DECISION AND
9            Plaintiff,                  | ORDER DENYING IN PART,
                                        | GRANTING IN PART WITH LEAVE
10           v.                          | TO AMEND, AND GRANTING IN
                                        | PART WITH PREJUDICE
11  ATWATER RESERVE OFFICER MICHAEL      | DEFENDANTS' MOTIONS TO
    TEATER, et al.,                     | DISMISS COMPLAINT (Docs. 12,
12                                       | 35 & 37)
             Defendants.                |
13
14
15       Before the Court are the motions to dismiss for failure to

16  state a claim upon which relief can be granted pursuant to Rule

17  12(b)(6), Federal Rules of Civil Procedure, filed by Defendants

18  Gordon Spencer, the County of Merced, and Logan McKechnie.

19
20                    I. __INTRODUCTION__.

21       This case arises out of the arrest of Plaintiff Richard Byrd

22  ("Byrd") on March 11, 2004 by the Sheriff's Department of the

23  County of Merced, California ("Merced County") and his subsequent

24  detention.  On March 15, 2004, Byrd was charged with bribing

25  Defendant Michael Teater, an Atwater reserve officer, in

26  violation of Cal. Penal Code § 67 and carrying a loaded firearm

27  from a November 2003 arrest.  Bail was set at $500,000.  While in

28  custody Byrd sold his ranch property out of alleged economic

                                1

necessity to a group of purchasers comprised of various private citizens and two Merced County employees: Defendant Mark Pazin ("Pazin"), who is the Merced County sheriff, and Defendant Gordon Spencer ("Spencer"), then District Attorney for the County of Merced.  Byrd contends he was arrested on charges concocted by Teater and wrongfully detained, prosecuted and deprived of his due process and property rights by Spencer, Pazin, and the other purchasers acting under a conspiracy.

Plaintiff Byrd's suit under 42 U.S.C. § 1983 alleges violations of his Fourth, Fifth, Sixth and Fourteenth Amendment rights by Merced County officials Spencer and Pazin, by the other private citizen purchasers alleged to have conspired with Spencer and Pazin, and by the County of Merced and City of Atwater.  Byrd also asserts various state law claims against these defendants. Byrd asserts a state legal malpractice claim against Defendant C. Logan McKechnie, the attorney who represented him in the criminal proceeding.

Before the court for decision are three motions to dismiss. First, Defendant Spencer brings a 12(b)(6) motion to dismiss on the grounds that: 1) he is absolutely immune as a prosecutor under section 1983 and California state law, and 2) Byrd failed to comply with the pleading requirements of the California Government Tort Claims Act.  Defendant Spencer also asserts that Byrd failed to comply with Fed. R. Civ. P. 4(m) and two court orders regarding service of process and his complaint should thus be dismissed under Fed. R. Civ. P. 41(b).  Second, Defendant County of Merced brings a 12(b)(6) motion to dismiss, or alternatively, a 12(e) motion for a more definite statement on

the grounds that: 1) Byrd cannot establish *Monell* liability because neither Spencer nor Pazin were policymakers for Merced County and Byrd's allegations regarding the County's customs and policies and failure to supervise, discipline or terminate Spencer and Pazin are conclusory and insufficient and 2) Byrd has failed to comply with the pleading requirements of the California Government Tort Claims Act.  Third, Defendant McKechnie moves to dismiss under 12(b)(6), or in the alternative, for a more definite statement under 12(e) on the grounds that: 1) subject matter jurisdiction is lacking for the legal malpractice claim, and 2) Byrd's claim is time-barred by Cal. Civ. P. 340.6, the statute of limitations for legal malpractice claims.  Defendant McKechnie also moves to strike irrelevant portions of Byrd's complaint under Fed. R. Civ. P. 12(f).

## II.   FACTUAL ALLEGATIONS.

Plaintiff alleges various law enforcement personnel falsely arrested him on bribery charges on March 11, 2004, to take financial advantage of him in his intoxicated and incarcerated state.  While he was in custody, Byrd found it necessary to sell his 21 acre ranch property to pay for his legal representation, newly built home, ongoing business expenses and other short term expenses.  As a result of his purported false arrest, Byrd was allegedly forced to sell this real estate valued at $6 million for only $1.3 million.  Byrd alleges that the various defendants conspired in his arrest and incarceration and benefitted from the "forced" sale of his real estate.  Byrd alleges Merced County employees Spencer and Pazin were part of the group of purchasers

that bought his property at this below-market price.  Byrd further alleges that the real estate salespersons and company he hired, who are also named as defendants, never advised Byrd of the actual value of his property and falsely misrepresented to him that a nearby property of similar size had sold for $700,000. Byrd alleges that all the purchasers were aware of Byrd's incarceration, Spencer and Pazin's involvement, and the lucrative property's reasonable valuation.

Byrd was charged with bribing Reserve Officer Michael Teater on March 15, 2004, in violation of Cal. Penal Code § 67 and carrying a loaded firearm, for which he was previously arrested on November 21, 2003.  Byrd alleges that despite the fact that he had no prior criminal history, the District Attorney's office sought and obtained a $500,000 bail for the charges at the direction of Spencer and Pazin, which prevented Plaintiff from obtaining his pretrial release.  On May 6, 2004, Byrd pled no contest to a reduced charge of obstructing an executive officer in violation of Penal Code § 69.  The conditions of the plea were that the remaining charges would be dismissed and that Byrd would serve three years felony probation, six months in county jail, and voluntarily enroll in a residential alcohol treatment program.  At the time the plea was being negotiated, Byrd alleges his property was already for sale and the purchasers were already contemplating buying it.  Byrd alleges, "It was known that [he] would remain in custody throughout the time of the consummation and finalization of the purchase under the proposed terms of the plea bargain, and that his continuing in custody status was what in large part necessitated his sale of the property." (Doc. 1 at

¶ 25.)  Byrd alleges Spencer and Pazin knew Byrd was under the effects of severe alcoholism.

On or about May 18, 2004 Byrd reached agreement with the group of purchasers to sell the property to them for $1.3 million, which Byrd alleges was about 20 percent of the actual value of the property.  The sale closed escrow and was recorded on July 1, 2004.  On July 16, 2004, Byrd was sentenced and received credit for time served.  He enrolled immediately in a residential alcohol treatment program where he resided until September 2004.  Byrd alleges he had restricted use of communication tools during his time in the program and did not know or understand the false nature of the criminal charges against him and subsequent illegitimate purchase of his property until he was out of the treatment program and in control of his alcoholism.

As to Defendant McKechnie, Byrd's attorney in the criminal matter, Byrd alleges a claim for legal malpractice on grounds that he failed to zealously advocate on Byrd's behalf, left him without bail and in jail for longer than Byrd believed was appropriate, and thus contributed to the purported below-market sale of his property.  Byrd further alleges McKechnie was on notice of the false nature of the charges against him, his entrapment by and the criminal history of Reserve Officer Teater, and the identities of the prospective purchasers of Byrd's property.  Despite this knowledge, Byrd alleges McKechnie did nothing to exonerate Byrd or secure his earlier release from custody.

Against the moving defendants, Byrd alleges violation of

federal and state civil rights laws and state common laws.  Byrd
alleges Defendant Spencer is liable in his individual and
official capacities under 42 U.S.C. § 1983 for violation of
Byrd's Fourth, Fifth, Sixth and Fourteenth Amendment rights, as
Spencer acted under color of law and within the course and scope
of his duties as District Attorney of the County of Merced.  Byrd
also asserts a claim for declaratory relief and a Cal. Civ. Code
§ 52.1 claim for the above violations.  Byrd further brings state
common law claims for abuse of process, manipulation of criminal
proceedings, intentional interference with economic advantage,
conspiracy, fraud, breach of the covenant of good faith and fair
dealing, negligent misrepresentation and rescission.

       As to Defendant County of Merced, Plaintiff brings a section
1983 claim for failing to terminate, supervise and discipline
Spencer and Pazin, who are alleged to be policymakers for Merced
County.  Plaintiff also brings a claim for declaratory relief.
Under Cal. Civ. Code 52.1, Plaintiff brings a claim for the
alleged federal constitutional violations as listed above.
Plaintiff also brings a state law claim for vicarious liability
for the misconduct of Spencer and Pazin.

       As to Defendant McKechnie, Plaintiff brings a single state
claim for professional negligence.

       Defendant McKechnie filed a Motion to Dismiss for Failure to
State a Claim, Motion to Strike and Motion for a More Definite
Statement on May 14, 2007.  (Doc. 12.)  Defendant County of
Merced filed a Motion to Dismiss, or Alternatively, Motion for
More Definite Statement on August 14, 2007.  (Doc. 35.)  On the
same day Defendant Spencer also filed a Motion to Dismiss.  (Doc.

**6**

37.)

### III. **STANDARD OF REVIEW**.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint "should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)(citations omitted); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In deciding a motion to dismiss, the court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002).

The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986), while conclusions of law, conclusory allegations, unreasonable

**7**

inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."). Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Thus when ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court may take judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1988).

## IV. DISCUSSION.

A.    Section 1983 Claims Arising Out of a Criminal Conviction.

The face of the complaint raises an issue that must be addressed. A convicted plaintiff cannot bring a section 1983 claim arising out of alleged unconstitutional activities that resulted in his criminal conviction unless the conviction is set aside.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

**8**

> determination, or called into question by a
> federal court's issuance of a writ of habeas
> corpus, 28 U.S.C. § 2254.  A claim for
> damages bearing that relationship to a
> conviction or sentence that has *not* been so
> invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  Without such a showing of a "favorable termination," the person's cause of action under § 1983 has not yet accrued.  *Id*. at 489.  Thus if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, the complaint must be dismissed.  *Id*. at 487.

The Ninth Circuit has found that "[t]here is no question" that the "favorable termination" rule bars a convicted plaintiff's claim that defendants falsely arrested him and brought unfounded charges.  *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).  Wrongful arrest and bringing false charges could not have occurred unless the plaintiff was innocent of the crime for which he was convicted.  *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006).

Plaintiff argues that because he alleges that he had already completed his sentence prior to discovering the basis for his Section 1983 claims, *Heck v. Humphrey* does not bar this action.

In support of his position, Plaintiff cites *Spencer v. Kemna*, 523 U.S. 1 (1998) and *Nonette v. Small*, 316 F.3d 872 (9th Cir.2002), *cert. denied,* 540 U.S. 1218 (2004).

In *Spencer v. Kemna*, an inmate filed a habeas corpus petition, challenging allegedly unconstitutional parole revocation procedures.  The Court of Appeal affirmed the District Court's dismissal of the petition as moot, after petitioner's

**9**

sentences had expired.  The Supreme Court affirmed, holding that

the expiration of petitioner's sentence caused his petition to be

moot because it no longer presented an Article III case or

controversy.  In pertinent part, the Supreme Court addressed the

petitioner's contention:

> [S]ince our decision in *Heck v. Humphrey* ...
> would foreclose him from pursuing a damages
> action under ... § 1983, unless he can
> establish the invalidity of his parole
> revocation, his action to establish that
> invalidity cannot be moot.  This is a great
> non sequitur, unless one believes (as we do
> not) that a § 1983 action for damages must
> always and everywhere be available.  It is
> not certain, in any event, that a § 1983
> damages claim would be foreclosed.  If, for
> example, petitioner were to seek damages 'for
> using the wrong procedures, not for reaching
> the wrong result,' see *Heck*, 512 U.S., at
> 482-483 ..., and if that procedural defect
> did not 'necessarily imply the invalidity of'
> the revocation, see *id.,* at 487 ..., then
> *Heck* would have no application at all ....

523 U.S. at 17.  Justice Souter's concurring opinion states in

pertinent part:

> *Heck* did not hold that a released prisoner in
> Spencer's circumstances is out of court on a
> § 1983 claim, and for reasons explained in my
> *Heck* concurrence, it would be unsound to read
> either *Heck* or the habeas statute as
> requiring any such result.  For all that
> appears here, then, Spencer is free to bring
> a § 1983 action, and his corresponding
> argument for continuing habeas standing falls
> accordingly.
>
> The petitioner in *Heck* was an inmate with a
> direct appeal from his conviction pending,
> who brought a § 1983 action for damages
> against state officials who were said to have
> acted unconstitutionally in arresting and
> prosecuting him.  Drawing an analogy to the
> tort of malicious prosecution, we ruled that
> an inmate's § 1983 claim for damages was
> unavailable because he could not demonstrate
> that the underlying criminal proceedings had
> terminated in his favor.

To be sure, the majority opinion in *Heck* can be read to suggest that this favorable-termination requirement is an element of any § 1983 action alleging unconstitutional conviction, whether or not leading to confinement and whether or not any confinement continued when the § 1983 action was filed. *Heck v. Humphrey*, 512 U.S., at 483-484 ... Indeed, although *Heck* did not present such facts, the majority acknowledged the possibility that even a released prisoner might not be permitted to bring a § 1983 action implying the invalidity of a conviction or confinement without first satisfying the favorable-termination requirement. *Id.*, at 490, n.10 ....

Concurring in the judgment in *Heck*, I suggested a different rationale for blocking an inmate's suit with a requirement to show the favorable termination of the underlying proceedings ... I read the 'general' § 1983 statute in light of the 'specific' federal habeas statute, which applies only to persons 'in custody' ... and requires them to exhaust state remedies ... I agreed that 'the statutory scheme must be read as precluding such attacks,' ... not because the favorable-termination requirement was necessarily an element of the § 1983 cause of action for unconstitutional conviction or custody, but because it was a 'simple way to avoid collisions at the intersection of habeas and § 1983.' ....

I also thought we were bound to recognize the apparent scope of § 1983 when no limitation was required for the sake of honoring some other statute or weighty policy, as in the instance of habeas.  Accordingly, I thought it important to read the Court's *Heck* opinion as subjecting only inmates seeking § 1983 damages for unconstitutional conviction or confinement to 'a requirement analogous to the malicious-prosecution tort's favorable-termination requirement,' ... lest the plain breadth of § 1983 be unjustifiably limited at the expense of persons not 'in custody' within the meaning of the habeas statute. The subsequent case of *Edwards v. Balisak*, 520 U.S. 641 ... (1997), was, like *Heck* itself, a suit by a prisoner and so for present purposes left the law where it was after *Heck*.  Now, as then, we are forced to recognize that any application of the

11

favorable-termination requirement to § 1983
suits brought by plaintiffs not in custody
would produce a patent anomaly: a given claim
for relief from unconstitutional injury would
be placed beyond the scope of § 1983 if
brought by a convict free of custody (as, in
this case, following service of a full term
of imprisonment), when exactly the same claim
could be redressed if brought by a former
prisoner who had succeeded in cutting his
custody short though habeas.

The better view, then, is that a former
prisoner, no longer 'in custody,' may bring a
§ 1983 action establishing the
unconstitutionality of a conviction or
confinement without being bound to satisfy a
favorable-termination requirement that would
be an impossibility as a matter of law for
him to satisfy.  Thus, the answer to
Spencer's argument that his habeas claim
cannot be moot because *Heck* bars him from
relief under § 1983 is that *Heck* has no such
effect.  After a prisoner's release from
custody, the habeas statute and its
exhaustion requirement would have nothing to
do with his right to any relief.

523 U.S. at 19-21.

In *Nonnette v. Small*, *supra*, 316 F.3d 872, a parolee sued

state prison officials under Section 1983, alleging that they

violated his constitutional rights by revoking good-time credits

and imposing administrative segregation in disciplinary

proceedings without supporting evidence.  The District Court

granted summary judgment for defendants.  The Ninth Circuit held

that the parolee could maintain the Section 1983 action without

first obtaining a writ of habeas corpus, even though success in

the action would have implied the invalidity of the disciplinary

proceeding, since the petition for habeas relief would have been

dismissed for lack of case of controversy.  The Ninth Circuit

stated in pertinent part:

... Does the unavailability of a remedy in

12

habeas corpus because of mootness permit Nonnette to maintain a § 1983 action for damages, even though success in that action would imply the invalidity of the disciplinary proceeding that caused revocation of his good-time credits? Although the answer is not entirely clear under *Heck* and its progeny, we join the Second and Seventh Circuits in concluding that, in these circumstances, a § 1983 claim may be maintained.

Admittedly, there is language in *Heck* suggesting that the prior overturning of an underlying conviction is invariably a prerequisite for a § 1983 action that implies the conviction's invalidity. *Heck*'s analogy to malicious prosecution, which requires favorable termination of criminal proceedings as an element of the civil claim, is perhaps the strongest example ... But *Heck* dealt with a prisoner who was still incarcerated, and thus where a remedy in habeas corpus was available.

*Spencer*, on the other hand, dealt with a prisoner who had completed his term; indeed, that completion caused his habeas petition challenging revocation of parole to be dismissed as moot ... One argument raised by Spencer was that his case should not be considered moot because, under *Heck*, his habeas action would be a prerequisite to a civil suit under § 1983.  Justice Scalia's opinion for the Court characterized this argument as 'a great non-sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available.' ... But, if Justice Scalia's statement means that a § 1983 action is precluded even though a habeas petition would be dismissed as moot, five Justices disagreed with it.  Justice Souter, writing for four concurring Justices, stated:

> *Heck* did not hold that a released prisoner in Spencer's circumstances is out of court on a § 1983 claim, and for reasons explained in my *Heck* concurrence, it would be unsound to read either *Heck* or the habeas statute as requiring any such result.  For all that appears here, then, Spencer is free to bring a § 1983 action, and his

13

> corresponding argument for
> continuing habeas standing falls
> accordingly.

> ... Justice Stevens, who dissented on the
> issue of mootness, dropped a footnote
> stating:

>> Given the Court's holding that
>> petitioner does not have a remedy
>> under the habeas statute, it is
>> perfectly clear, as Justice SOUTER
>> explains, that he may bring an
>> action under 42 U.S.C. § 1983.

>> ....

> Informed as we are by the opinions in
> *Spencer*, we conclude that *Heck* does not
> preclude Nonnette's § 1983 action.  In so
> ruling, we are in accord with the decisions
> of at least two of our sister circuits.  *See*
> *Huang v. Johnson,* 251 F.3d 65, 75 (2nd
> Cir.2001)(discussing *Heck* and *Spencer* and
> concluding that a § 1983 action challenging
> denial of credit for time served in pre-trial
> incarceration was not barred by *Heck* because
> the incarceration had been fully served and
> habeas was unavailable); *Carr v. O'Leary*, 167
> F.3d 1124, 1127 (7th Cir.1999)(State will not
> be relieved of waiver of *Heck* defense because
> *Heck* does not appear to apply to plaintiff
> challenging loss of good-time credits after
> release from prison, where habeas is
> unavailable.

316 F.3d at 876-877.

Defendant Spencer cites *Guerrero v. Gates*, *supra*, 442 F.3d
697, in arguing that Plaintiff's reliance on *Spencer* and *Nonnette*
is unavailing.  In *Guerrero v. Gates*, the Ninth Circuit held in
pertinent part:

> Guerrero's prior convictions have never been
> invalidated.  We therefore hold that, with
> the exception of his excessive force claim,
> *Heck* bars Guerrero's § 1983 claims.

> The fact that Guerrero is no longer in
> custody and thus cannot overturn his prior
> convictions by means of habeas corpus does
> not lift *Heck*'s bar.  Although exceptions to

14

*Heck*'s bar for plaintiffs no longer in custody may exist, as suggested by concurring members of the Supreme Court in *Spencer v. Kemna*, and adopted by this court in *Nonnette v. Small*, any such exceptions would not apply here.

The *Spencer* concurrence suggests that a plaintiff's inability to pursue habeas relief after release from incarceration should create an exception to *Heck*'s bar.  The plaintiff in *Spencer* had diligently sought relief for his claim of invalid revocation of parole.  After appealing the denial of his state habeas petition all the way to the state supreme court, he filed a federal habeas petition.  His prison term ended, however, before the court could render a decision.  Justice Souter, writing for the concurring justices, stated, '*Heck* did not hold that a released prisoner *in Spencer's circumstances* is out of court on a § 1983 claim.'  If that were the case, he explained, '[t]he convict given a fine alone ... or sentenced to a term too short to permit even expeditious litigation without continuances before expiration of the sentence, would always be ineligible for § 1983 relief.'  Thus, Justice Souter's concurrence suggested that a prisoner who was no longer in custody and therefore unable to obtain habeas relief could pursue his § 1983 claims.

In following the reasoning of the concurrence in *Spencer*, we have emphasized the importance of timely pursuit of available remedies in two cases.  In *Cunningham v. Gates*, [312 F.3d 1148], we held that *Heck* barred the plaintiff's § 1983 claim despite the fact that habeas relief was unavailable.  Habeas relief was 'impossible as a matter of law' in Cunningham's case because he failed timely to pursue it.  We 'decline[d] to hold that Cunningham's failure to timely pursue habeas remedies [took] his § 1983 claim out of *Heck*'s purview.

Although we held in *Nonnette* that the plaintiff could bring § 1983 claims despite the *Heck* bar because habeas relief was unavailable, we did so because Nonnette, unlike Cunningham, timely pursued appropriate relief from prior convictions.  *Nonnette* was founded on the unfairness of barring a plaintiff's potentially legitimate

15

constitutional claims when the individual
immediately pursued relief after the incident
giving rise to those claims and could not
seek habeas relief only because of the
shortness of his prison sentence.   In
reversing the district court's dismissal of
Nonnette's § 1983 claims, we stated:

> The fact that Nonnette has been
> released from the incarceration
> that his civil suit, if successful,
> would impugn, and that a habeas
> petition would be moot for that
> reason, differentiates this case
> from our recent decision in
> *Cunningham v. Gates.*   In
> *Cunningham,* the plaintiff brought a
> civil suit that would have impugned
> the conviction for which he was
> still incarcerated; habeas corpus
> was unavailable only because he had
> let the time for such a petition
> expire.   Under those circumstances,
> we declined to take the case out of
> the rule of *Heck*.

Thus, a § 1983 plaintiff's timely pursuit of
available habeas relief is important.   Even
so, we emphasized that *Nonnette*'s relief from
*Heck* 'affects only former prisoners
challenging loss of good-time credits,
revocation of parole or similar matters,' not
challenges to an underlying conviction such
as those Guerrero brought.

We find Guerrero's situation to resemble
*Cunningham* more closely than *Nonnette*.
Guerrero never challenged his convictions by
any means prior to filing this lawsuit.
Nearly three years passed from his last
encounter with the LAPD before he took any
action at all.   His failure timely to achieve
habeas relief is self-imposed.   Thus, as in
*Cunningham*, though habeas relief for Guerrero
may be 'impossible as a matter of law,' we
decline to extend the relaxation of *Heck*'s
requirements.   Guerrero cannot now use his
'failure to timely pursue habeas remedies' as
a shield against the implications of *Heck*.
Accordingly, we hold that *Heck* bars
Guerrero's § 1983 claims of wrongful arrest,
malicious prosecution, and conspiracy.

442 F.3d at 704-705.

16

1      Plaintiff's sentence was six months incarceration (credit
2  for time-served), voluntary enrollment in a residential alcohol
3  treatment program, and three years felony probation.  Plaintiff
4  was still on probation when he filed this action.  Plaintiff was
5  not precluded from seeking habeas relief before he completed the
6  sentence.  *Guerrero* makes clear that *Nonnette* is limited to
7  former prisoner's challenging loss of good-time credits,
8  revocation of parole or similar matters.  Plaintiff's claims
9  based on the invalidity of his conviction are barred by *Heck v.*
10 *Humphrey*.

11     Plaintiff contends: "Since one of [his] Section 1983 claims
12 is that his case was mishandled, i.e., unduly delayed,
13 excessively bailed, and unduly sentenced, in order for the
14 defendants to gain their illicit advantage, the <u>Heck</u> rule is
15 inapposite in part.  <u>Heck</u> does not apply when the gravamen of the
16 claim is against the procedures employed during the criminal
17 proceeding and not the result."

18     Plaintiff's claims that his criminal proceedings were
19 "unduly delayed" and that he was "unduly sentenced" are barred by
20 *Heck* because they necessarily imply the invalidity of his
21 conviction and sentence.  A claim that the right to a speedy
22 trial has been violated of necessity challenges the validity of
23 the underlying conviction.  A claim challenging the sentence
24 imposed is barred explicitly by *Heck*.

25     Defendants' motions to dismiss the Section 1983 claims on
26 the basis of *Heck v. Humphrey* are GRANTED WITH PREJUDICE to the
27 extent the Section 1983 claims are based on Plaintiff's alleged
28 false arrest and prosecution, on delay in the criminal

1  proceedings against Plaintiff, and on the sentence imposed.

2  Defendants' motions to dismiss the Section 1983 claims on the

3  basis of *Heck v. Humphrey* are DENIED to the extent the claims are

4  based on excessive bail.  This claim addresses a procedure used

5  that does not depend on the invalidity of Byrd's conviction and

6  for which the availability of habeas corpus expired upon

7  Plaintiff's relief from custody.

8  B.   Defendant Spencer's 12(b)(6) Motion to Dismiss and Rule

9      41(b) Motion.

10      Defendant Spencer moves to dismiss Plaintiff's claims

11  against him under Rule 12(b)(6) for failure to state a claim,

12  because the complaint alleges his activities as a Merced County

13  prosecutor, he is absolutely immune to Plaintiff's section 1983

14  claim and absolutely immune under Cal. Gov. Code § 821.6 to

15  Plaintiff's state law claims.  He further alleges Plaintiff's

16  state law claims fail because Plaintiff has failed to comply with

17  the pleading requirements of the California Tort Claims Act

18  ("CTCA").  Finally, Defendant Spencer seeks dismissal pursuant to

19  Fed. R. Civ. P. 41(b) alleging Plaintiff failed to timely serve

20  him under Rule 4(m) and also failed to comply with two court

21  orders granting extensions of time for service of process.

22      1.   Section 1983 claim - Absolute Prosecutorial Immunity.

23      Prosecutorial immunity protects eligible government

24  officials who perform functions "intimately associated with the

25  judicial phase of the criminal process."  *Imbler v. Pachtman*, 424

26  U.S. 409, 430 (1976).  "Such immunity applies even if it leaves

27  the genuinely wronged [plaintiff] without civil redress against a

28  prosecutor whose malicious or dishonest action deprives him of

18

liberty."  *Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir. 1986) (internal quotations omitted).  A prosecutor is protected by absolute immunity for any actions that are "quasi-judicial" in nature and are performed "within the scope of [the prosecutor's] authority."  *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 678 (9th Cir. 1984).

Absolute immunity is most clearly applied to acts taken by a prosecutor to prepare for the initiation of judicial proceedings or for trial and which occur within the role of an advocate.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).  However, absolute immunity also applies to investigative activities undertaken in order to prepare a case, *Ybarra,* 723 F.2d at 679, and to actions taken by prosecutors for the purpose of determining whether to bring charges in the first place, *Demery v. Kupperman,* 735 F.2d 1139, 1144 (9th Cir. 1984).  As a general rule, absolute immunity applies to acts "having more or less connection with the general matters committed to [the prosecutor's] control or supervision."  *Ybarra*, 723 F.2d at 678.

The Ninth Circuit has reasoned that absolute immunity should <u>not</u> apply "[w]hen a prosecutor performs the investigative functions normally performed by a police officer."  *Genzler v. Loganbach*, 410 F.3d 630, 639 (9th Cir. 2005).  However, when a prosecutor "is organizing, evaluating, and marshaling that evidence in preparation for a pending trial, in contrast to the police-like activity of acquiring evidence which might be used in a prosecution," it is more appropriate to apply absolute immunity.  *Id*.

With respect to the claims he brings against Spencer, a

19

former District Attorney for the County of Merced, Byrd asserts "Spencer was acting under color of law and within the course and scope of his duties." (Doc. 1, ¶ 5.) Byrd alleges that Spencer was involved in charging Byrd and seeking and obtaining bail in the amount of $500,000. (Doc. 1, ¶ 21.) He further asserts that even after Byrd pled to a lesser charge, "no motion was made by either the prosecution or the defense to reduce his $500,000 bail...."

Nowhere does Byrd allege that Spencer was engaged in activities outside the scope of his duties as a prosecutor. Nor does Byrd allege Spencer's involvement in any police-like "investigative functions" that might favor the imposition of qualified immunity over absolute immunity. *Genzler*, 410 F.3d at 639. Here Spencer is protected by absolute immunity for liability in damages under Section 1983 in deciding whether to charge Byrd with a crime, what statute to base the charges on, and in pursuing and preparing a criminal case against him. *Imbler*, 424 U.S. at 431 ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under 1983"). In seeking bail at $500,000, Spencer was also acting as an advocate for Merced County during the judicial phase. In holding that a prosecutor was entitled to absolute immunity for his participation in a probable cause hearing, the Supreme Court reasoned that appearing before a judge and presenting evidence in support of a motion for a search warrant involved the prosecutor's role as advocate because the issuance of a search warrant is a judicial act. *Burns v. Reed*, 500 U.S. 478, 491 (1991). Similarly, the setting

of bail is a judicial act and any role Spencer played in seeking a specific amount was part of his duty to advocate on behalf of Merced County.

To the extent the Complaint alleges that Spencer conspired with Defendant Mauzy and others in the misrepresentation of the value of Plaintiff's real property in order to purchase the real property at a deflated value, such claim for damages is not barred by absolute prosecutorial immunity.

Plaintiff acknowledges that prosecutors are absolutely immune from liability for individual damages claims, but contends that this absolute immunity does not apply to claims for equitable relief. *See Partington v. Gedan*, 961 F.2d 852, 860 n.8 (9th Cir.1992), citing *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986).

Because he is entitled to the absolute immunity of a prosecutor, Defendant Spencer's motion to dismiss is GRANTED with respect to the Section 1983 claims to the extent that Plaintiff seeks monetary relief based on Defendant Spencer's actions as a prosecutor. Defendant Spencer's motion is DENIED with respect to the Section 1983 claims to the extent Plaintiff alleges that Defendant Spencer conspired to acquire Plaintiff's real property and to the extent Plaintiff seeks equitable relief, i.e., the expungement of his conviction or restoration of his real property, only to the extent that Spencer is legally capable of responding to grant the equitable relief sought.

2. <u>Section 1983 Claim - "Person"</u>.

Spencer moves to dismiss the Section 1983 claims alleged against him on the ground that a district attorney is not a

21

1   "person" within the meaning of Section 1983.

2          Plaintiff concedes this ground for dismissal to the extent

3   Spencer is sued in his official capacity.  However, Plaintiff

4   argues, to the extent Spencer is sued in his individual capacity

5   and to the extent the Complaint seeks declaratory relief, this

6   ground for dismissal is without merit.

7          Plaintiff asserts that *McMillan v. Monroe County*, 520 U.S.

8   781 (1987), and *Pitts v. County of Kern*, 17 Cal.4th 340 (1998),

9   "only cumulatively establish that, when sued for damages in his

10  official capacity, a California district attorney is not a

11  'person' for purposes of Section 1983."  Plaintiff refers to

12  *McMillan, id.,* 520 U.S. at 784 n.1:

13              The claims against the defendants in their
                individual capacities have proceeded
14              independently in the lower courts, with some
                of petitioner's claims surviving motions for
15              summary judgment ....

16  Plaintiff also refers to *Pitts v. County of Kern*, *id.*, 17 Cal.4th

17  at 348:

18              Neither states nor state officials acting in
                their official capacities are 'person[s]'
19              within the meaning of section 1983 when sued
                for damages.

20

21      *Brewster v. County of Shasta*, 112 F.Supp.2d 1185, 1188 n.2

    (E.D.Cal.2000), *aff'd*, 275 F.3d 8023 (9th Cir.2001), *cert.*

22

    *denied*, 537 U.S. 814 (2002), holds:

23

24              Of course, suits under § 1983 lie against
                government officials, state or local, sued in
                their individual capacity for injuries caused
25              by their conduct in violation of the
                plaintiff's established constitutional
26              rights.  *See Kentucky v. Graham*, 473 U.S.
                159, 165 ... (1985)('Personal-capacity suits
27              seek to impose personal liability upon a
                government official for actions he takes
28              under color of state law.')

                                    22

1   Spencer cites no contrary authority.  To the extent the

2   Complaint alleges claims under Section 1983 against Defendant

3   Spencer in his official capacity, the motion to dismiss on this

4   ground is GRANTED.  To the extent the Complaint alleges claims

5   against Defendant Spencer in his individual capacity which have

6   not been barred by absolute prosecutorial immunity, the motion to

7   dismiss on this ground is DENIED.

8        3.   <u>State Law Claims</u>.

9             a.   <u>Pleading Requirements of the California Tort</u>

10                 <u>Claims Act</u>.

11   The California Tort Claims Act requires an individual

12   seeking money or damages from a public agency to first file a

13   claim with the agency.  Cal. Gov. Code, § 900 et seq.; *Ard v.*

14   *County of Contra Costa*, 93 Cal.App.4th 339, 343 (2001).

15   Presentation of a timely tort claim is a prerequisite to

16   maintaining such a cause of action against a public entity.  *Id.*;

17   *see Hernandez v. McClanahan*, 996 F.Supp. 975 (N.D.Cal. 1998).  A

18   plaintiff's pendent state law claims against a California public

19   agency are barred unless the plaintiff has complied with the

20   requirements of the Tort Claims Act before commencing a civil

21   action.  *See Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d

22   1470, 1477 (9th Cir. 1995).

23   The purpose of the claim presentation requirement "is to

24   facilitate early investigation of disputes and settlement without

25   trial if appropriate, as well as to enable the public entity to

26   engage in fiscal planning for potential liabilities and to avoid

27   similar liabilities in the future."  *Gatto v. County of Sonoma*,

28   98 Cal.App.4th 744, *9 (2002) (quoting *Lewis C. Nelson & Sons,*

23

*Inc. v. Clovis Unified School Dist.*, 90 Cal.App.4th 64, 72 (2001)).

The claim must include "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." Cal. Gov't Code § 910(d). The sufficiency of a claim presented under the California Torts Claim Act is a case-specific inquiry. When the claim and the complaint set out different factual circumstances, where there has been "a complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim," the claim is not sufficient. *Blair v. Superior Court*, 218 Cal.App.3d 221, 226 (1990). A complaint is subject to dismissal "if it alleges a factual basis for recovery which is not fairly reflected in the written claim." *Watson v. California*, 21 Cal.App.4th 836, 844 (1993) (quoting *Nelson v. California*, 139 Cal.App.3d 72, 79 (1982)).

"The essential elements of a claim are set forth in Government Code section 910. They include (1) the names and addresses of the claimant and the person to whom notices are to be sent, (2) a statement of the facts supporting the claim, (3) a description of the injury and the amount claimed as of the time of presentation, and (4) the name(s) of the public employee(s) who caused the injury, if known. Although a claim need not conform to pleading standards, the facts constituting the causes of action pleaded in the complaint must substantially correspond with the circumstances described in the claims as the basis of

24

the plaintiff's injury." *Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 1082-1083 (1983) (citing *Connelly v. State of California,* 3 Cal.App.3d 744, 743 (1970)).

Plaintiff concedes that he did not comply with the claim requirements of the California Tort Claims Act.

Plaintiff argues that this lapse "only results in the dismissal of state civil rights damage claims against the subject defendants as government officials, not other state claims against them as private purchasers of property." Plaintiff cites California Government Code § 905.

To the extent that the Complaint alleges claims against Defendant Spencer for fraud, breach of the covenant of good faith and fair dealing, intentional interference with prospective economic advantage, negligent misrepresentation, and rescission arising out of Defendant Spencer's acquisition of Plaintiff's real property, the claim requirement of the Tort Claims Act does not apply.

Plaintiff further contends that, based on the plain language of California Government Code §§ 905 and 905.2, the tort claim requirement applies only to demands for monetary relief, not to claims for injunctive or declaratory relief. Therefore, Plaintiff argues, the state civil rights claims for equitable relief against the government officials are not subject to dismissal because of the failure to comply with the California Tort Claims Act.

An action for declaratory relief is not an action for money or damages. Cases hold that Section 905 does not apply to actions brought primarily for declaratory or injunctive relief,

even though incidental damages are sought.  *See M.G.M. Const. Co. v. Alameda County*, 615 F.Supp. 149, 151 (N.D.Cal. 1985). However, this rule has no application where a petition for declaratory or injunctive relief is merely incidental or ancillary to a prayer for damages. *See Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 1081 (1983); Van Alystne, California Government Tort Liability Practice, § 5.53 (4th Ed.)("Although nonpecuniary actions, such as those seeking injunctive, specific, or declaratory relief, and when money is an incident to such an action, are not subject to the claims-presentation requirements ..., when the primary purpose of such an action is pecuniary in nature the action has been held subject to the claims-presentation requirements of the Act.").  Finally, in *TrafficSchoolOnline, Inc. v. Clarke*, 112 Cal.App.4th 736, 738-741 (2003), the Court of Appeal held that a claim for incidental damages sought in conjunction with a petition for mandate must comply with the claim requirements of the Act pursuant to the plain meaning of Government Code § 945.4.

The allegations of the Complaint establish that the prayer for declaratory and injunctive relief is merely incidental or ancillary to the prayer for damages.  Plaintiff alleges that his damages "are monumental" and that he has "sustained loss of liberty for six months, expenses incurred in fighting an illegitimate criminal case, loss of his profitable business as a result of his false arrest, malicious prosecution and having to stay in custody for the length of time he did, loss of his reputation, loss of a property worth more than $6,000,000, as well as other general damages."  (¶ 28) The Complaint prays for

26

full compensatory damages, punitive damages, and treble damages under California Civil Code § 52.1.  The Complaint also prays for a declaration that Defendants have violated Plaintiff's constitutional rights, the full expungement of the records of his criminal arrest and prosecution, the full restoration of the property rights of which he has been deprived, and for rescission of the sale of his property and invalidation of the deed and related documents recorded on July 1, 2004.

Defendant Spencer's motion to dismiss for Plaintiff's failure to comply with the California Tort Claim Act is GRANTED IN PART WITH PREJUDICE as to claims for damages and equitable relief against Spencer for actions taken in his capacity of Merced County District Attorney.  Spencer's motion to dismiss for failure to comply with the California Tort Claim Act is DENIED to as to claims for damages and equitable relief arising out of Spencer's acquisition of Plaintiff's real property.

b. <u>Prosecutorial Immunity under Cal. Gov. Code § 821.6 for State Law Claims</u>.

California Government Code 821.6 provides that a public employee is immune from liability for injuries caused by instituting or prosecuting any judicial or administrative proceedings, even if the employee acts maliciously and without probable cause.  Section 821.6 immunity applies to public prosecutors. *Miller v. Filter*, 150 Cal.App.4th 652, 681 (2007); *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1209-10 (1994).  This immunity is absolute and reflects the public policy decision that it is better to leave unredressed the wrongs of unscrupulous prosecutors rather than "subject those who try to do their duty to the constant dread of

27

retaliation." *Miller*, 150 Cal.App.4th at 682.

"Under California law the immunity statute is given an 'expansive interpretation' in order to best further the rationale of the immunity, that is, to allow the free exercise of the prosecutor's discretion and protect public officers from harassment in the performance of their duties." *Ingram v. Flippo*, 74 Cal.App.4th 1280, 1292 (1999).

Here Byrd's claims against Spencer arise out of Spencer's actions as a Merced County District Attorney in bringing and prosecuting the criminal charge against him.  Section 821.6 prosecutorial immunity is designed to prevent attacks like these "on the validity of [] prosecuting the criminal action." *Miller*, 150 Cal.App.4th at 683-84. Accordingly, Spencer's motion is GRANTED as to Byrd's state law claims as he enjoys the absolute prosecutorial immunity provided for in section 821.6, except for the claim that Spencer wrongfully acquired an interest in Plaintiff's real property.

> c.    Conclusion on State Law Claims.

Because Byrd failed to comply with the pleading requirements of the California Tort Claims Act and because he is entitled to prosecutorial immunity under Cal. Gov. Code § 821.6, Defendant Spencer's motion to dismiss is GRANTED WITH PREJUDICE as to the state law claims, except as to the taking of real property claim.

> 4.    Defendant Spencer's Rule 41(b) Motion.

Defendant Spencer argues Plaintiff's claims against him should be dismissed under Rule 41(b), which authorizes dismissal for failure to comply with court orders or the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 41(b) provides that, "[f]or failure of the plaintiff to prosecute or to comply

28

with [the Federal Rules of Civil Procedure] or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."

> District courts have inherent power to control their dockets. In the exercise of that power they may impose sanctions including, where appropriate, default or dismissal. Dismissal, however, is so harsh a penalty it should be imposed as a sanction only in extreme circumstances. [Courts] have repeatedly upheld the imposition of the sanction of dismissal for failure to comply with pretrial procedures mandated by local rules and court orders. However, because dismissal is such a severe remedy, [courts] have allowed its imposition in . . . circumstances only after requiring the district court to weigh several factors:
>
> (1) the public's interest in expeditious resolution of litigation;
>
> (2)  the court's need to manage its  docket;
>
> (3)  the risk of prejudice to the defendants;
>
> (4)  the public policy favoring  disposition of cases on their merits[;] and
>
> (5)  the availability of less drastic  sanctions.

*Thompson v. Hous. Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (citations omitted).

Defendant Spencer argues that Plaintiff failed to comply with Rule 4(m) because he was served on June 28, 2007 almost one year after the complaint was filed on July 2006. Rule 4(m) requires service of process within 120 days. Defendant Spencer also asserts that Plaintiff failed to comply with two court orders extending time for service of process, the last of which extended the time for service to April 25, 2007. Despite these two extensions, Plaintiff still failed to serve Spencer until

June 28, 2007.

Spencer's motion to dismiss on this ground is DENIED.  The Court granted extensions of time for service and accepted Plaintiff's representations that Spencer was evading service of process.  Spencer's motion to dismiss pursuant to Rule 41(b) is DENIED.

C.   **Defendant Merced County's 12(b)(6) Motion to Dismiss**.

    1.   **Federal Section 1983 *Monell* Claim**.

Defendant Merced County asserts that Byrd has failed to state both federal and state claims under Rule 12(b)(6).  First, Merced County alleges Plaintiff's Monell claim fails because neither Spencer nor Pazin were policymakers for Merced County and the County cannot be held liable for their actions.  Second, Merced County argues that Plaintiff makes insufficient conclusory allegations as to the existence of any unconstitutional policy or custom and the alleged failure to terminate, supervise and discipline Spencer and Pazin.  Defendant Merced County further argues Plaintiff fails to identify any unconstitutional custom or policy and fails to set forth facts identifying how Merced County failed to terminate, supervise or discipline these employees.

Local government entities and local government officials acting in their official capacity can be sued for monetary, declaratory, or injunctive relief, but only if the allegedly unconstitutional actions took place pursuant to some "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers...."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Alternatively, if no formal policy exists, plaintiffs may point to "customs and usages" of the local government entity.  *Id*.  A local government entity

30

cannot be held liable simply because it <u>employs</u> someone who has acted unlawfully.  *Id*. at 694.  *See also Haugen,* 351 F.3d at 393 ("Municipalities cannot be held liable under a traditional respondeat superior theory. Rather, they may be held liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort.... [T]o establish municipal liability, a plaintiff must prove the existence of an unconstitutional municipal policy.").

To prevail in a civil rights claim against a local government under *Monell*, a plaintiff must satisfy a three-part test:

> (1)   The local government official(s) must have intentionally violated the plaintiff's constitutional rights;
>
> (2)   The violation must be a part of policy or custom and may not be an isolated incident; and
>
> (3)   There must be a link between the specific policy or custom to the plaintiff's injury.

*Id.* at 690-92.  There are a number of ways to prove a policy or custom of a municipality.  A plaintiff may show (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "the official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). The Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers

were not discharged or reprimanded." Id.

A municipality may still be liable under *Monell* for a single incident where: (1) the person causing the violation has "final policymaking authority;" (2) the "final policymaker" "ratified" a subordinate's actions; or (3) the "final policymaker" acted with deliberate indifference to a subordinate's constitutional violations. *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999).

### a.   Status of Spencer and Pazin as Merced County Policymakers.

Defendant Merced County argues that Defendant Spencer was not a policymaker for Merced County and thus any actions on his part cannot impose *Monell* liability on the County. The County argues Defendant Spencer acted as a state official in his role as a District Attorney.

To hold a local government liable for an official's conduct, a plaintiff must first establish that the official 1) had final policymaking authority "concerning the action alleged to have caused the particular constitutional or statutory violation at issue" and 2) was the policymaker for the local governing body for the purposes of the particular act. *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785 (1997). State law defines the official's "actual function...in a particular area" for section 1983 purposes and this function must be evaluated to determine whether he or she acts for the state or county. *Id.* at 786. In *Pitts v. County of Kern*, 17 Cal.4th 340 (1998), the California Supreme Court concluded that a district attorney acts on behalf of the state rather than the county in preparing to prosecute crimes and in training and developing policies for prosecutorial staff. *Pitts* involved section 1983 claims brought against Kern

32

County, its district attorney and employees by persons convicted of child molestation whose convictions were reversed on appeal.

The Ninth Circuit has also concluded that "under California law a county district attorney acts as a state official when deciding whether to prosecute an individual. *Weiner v. San Diego County*, 210 F.3d 1025, 1030 (9th Cir. 2000). That case involved a section 1983 claim based on an alleged wrongful prosecution. *Id.* Here Spencer was a Merced County District Attorney. As such, Ninth Circuit and California state authority compels the conclusion that he acted as a state official in bringing charges against and prosecuting Byrd. As a state official, Spencer's actions cannot impose *Monell* liability on Merced County.

Plaintiff concedes that Merced County is entitled to dismissal with respect to the allegations against Defendant Spencer on the ground that Spencer is a policymaker for the State.

Defendant Merced County also argues that Sheriff Pazin is similarly considered a state official under California law. Defendants argue Merced County cannot be liable for the actions of Sheriff Pazin because, under the recently decided California Supreme Court case, *Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004), county sheriffs act as state officials in their law enforcement roles and are therefore immune from liability under § 1983. If Defendants are correct, this protection would also shield the individual defendants sued in their official capacities.[1] *Venegas* involved a § 1983 claim against the County

_____

[1] A suit brought against a governmental officer is essentially a suit brought against the governmental entity. *Larez v. Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Under

33

of Los Angeles alleging an unconstitutional search and seizure. The *Venegas* court addressed whether sheriff's department employees sued in their official capacities for the unlawful acts of their subordinate officers may be held liable for constitutional violations carried out under their department's own regulations, policies, customs, or usages by persons having "final policymaking authority."   It is well-settled that states and state officials "sued in their official capacity are not considered persons under section 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity."  *Id*. at 829.

    Prior to the *Venegas* decision, the Ninth Circuit Court of Appeal held, in two separate cases, that sheriffs act as agents of the County, not the state.  *See Bishop Paiute Tribe v. County of Inyo*, 291 F.3d 549 (9th Cir. 2002), vacated on other grounds and remanded in *Inyo County v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701 (2003); *Brewster*

---

*Venegas*, a sheriff's deputy acts on behalf of the state. Therefore, his or her supervisors also act on behalf of the state and are consequently immune from liability.  The *Venegas* court correctly explained that its holding does not effect the potential liability of Deputy Benson:

> As *McMillian* explains, the rule exempting the state and its officers from liability under section 1983 applies to officers such as sheriffs only if they were acting as state agents with <u>final policymaking authority</u> over the complained-of actions.  Accordingly, the parties in this case have correctly assumed that the sheriff's *deputies* would not be shielded by the sheriff's own state agent immunity, and are "persons" who may be held liable for damages under section 1983 for violating someone's constitutional rights.

*Venegas*, 32 Cal. 4th at 839 (emphasis added).

*v. Shasta County*, 275 F.3d 803, 807-808 (9th Cir. 2001), cert. den. *Shasta County v. Brewster*, 537 U.S. 814 (2002).  **After examining** *Bishop* **and** *Brewster* **in light of the United States Supreme Court's opinion in** *McMillian v. Monroe County*, 520 U.S. 781, (1997) and California caselaw, including *Pitts v. County of Kern*, 17 Cal. 4th 340 (1998) and *County of Los Angeles v. Superior Court*, 68 Cal. App. 4th 1166 (1998), the *Venegas* court concluded that "California sheriffs act as state officers while performing state law enforcement duties such as investigating possible criminal activity."  *Id*. at 839.

Defendant points to *McMillan*, 520 U.S. at 786, for the proposition that identification of final policy-making authority is a pure question of state law.  *See also St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (holding that "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable [state] law puts it.").  The Ninth Circuit has held that, on such questions of state law, federal courts are bound to follow the decisions of the highest state court.  *Nelson v. Irvine*, 143 F.3d 1196, 1206 (9th Cir. 1998).

In *McMillan*, the United States Supreme Court examined whether county sheriffs in Alabama acted on behalf of the state and were therefore immune from suit under § 1983.  520 U.S. 781.  The Court found that the "inquiry is dependent on an analysis of state law."  *Id*. at 786.  The Court examined provisions of the Alabama Constitution pertaining to sheriffs, along with Alabama Supreme Court decisions interpreting those provisions.  *Id*. at 787-89.  The Alabama Supreme Court had previously concluded that sheriffs are state officers in the context of a tort claim

brought against sheriffs based on their official acts.  *Id*. at

789.  Although this tort case was not exactly on point, the

*McMillan* court found this to be "strong evidence in favor of

the...conclusion that sheriffs act on behalf of the State, rather

than the county, when acting in their law enforcement capacity."

*Id*.  After further analysis of various provisions of state law,

the *McMillan* court concluded that "Alabama sheriffs, when

executing their law enforcement duties, represent the State of

Alabama, not their counties."  *Id*. at 793.

In response to the objection that this conclusion would

create a "lack of uniformity in Alabama and throughout the

country," the Court explained that the "common law itself

envisioned the possibility that <u>state</u> law enforcement policies

might vary <u>locally</u>, as particular sheriffs adopted varying

practices...."  *Id*. at 794-95 (emphasis added).  As for the

concern that "sheriffs will be characterized differently in

different states," the Court responded:

> [W]hile it might be easer to decide cases arising under
> § 1983 and *Monell* if we insisted on a uniform national
> characterization for all sheriffs, such a blunderbuss
> approach would ignore a crucial axiom of our
> government: the States have wide authority to set up
> their state and local governments as they wish.
> Understandably, then, the importance of counties and
> the nature of county government have varied
> historically from region to region and from State to
> State.

*Id*. at 795.  Finally, the court addressed the concern "that state

and local governments will manipulate the titles of local

officials in a blatant effort to shield the local governments

from liability":

> Such efforts are already foreclosed by our
> decision in *Prapotnik* [which held that]
> egregious attempts by local governments to
> insulate themselves from liability for

> unconstitutional policies are precluded by
> allowing plaintiffs to prove that a
> widespread practice has been established by
> [a] custom or usage with the force of law.

*Id.* at 796 (internal citation and quotations omitted).

Here, unlike in *McMillan* where the Eleventh Circuit agreed that Alabama sheriffs act on behalf of the state and where there was no ruling of the Alabama Supreme court exactly on point, matters are complicated by the Ninth Circuit's unambiguous holding in two cases prior to *Venegas*.  In *Brewster*, *supra,* 275 F.3d 803, an individual brought a § 1983 action against two county sheriff's deputies, alleging that they violated his constitutional rights during the investigation of a crime.  The Ninth Circuit examined provisions of California statutory law, California case law, and the California Constitution, and concluded:

> California case law supports our conclusion that
> California sheriffs are county actors when
> investigating crime. We have found no California case
> holding that sheriffs are state actors when
> investigating crime.  Indeed,...our own court has long
> assumed that sheriffs act on behalf of the county, even
> when investigating crime.  We are not bound by the
> determination of the California Court of Appeal in
> *Peters* that California sheriffs are state actors.
> Questions regarding section 1983 liability implicate
> federal, not state, law, and the sheriff's
> investigative function was not at issue in *Peters*.

*Id*. at 811 (internal citations omitted).  *See also Bishop Paiute Tribe*, 291 F.3d at 562-66 (concluding that district attorney and sheriff acted as county officers when executing a search warrant to search tribal employee records).  *Venegas* explicitly rejects both *Bishop* and *Brewster*.  The Court's dicta in *Liu v. Carona*, 177 Fed.Appx. 623 (9th Cir.2006), indicates it adopts the *Venegas* approach:

The district court properly dismissed the

claims against Smith because she is immune
from section 1983 liability for actions taken
within her official capacity as a sheriff.
See McMillian v. Monroe County, 520 U.S. 781,
795, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)
(holding state law governs whether a sheriff
is considered a state or county official for
the purposes of section 1983 liability); see
also Venegas v. County of Los Angeles, 32
Cal.4th 820, 839-40, 11 Cal.Rptr.3d 692, 87
P.3d 1 (2004) ( "California sheriffs act as
state officers while performing state law
enforcement duties"); Doe v. Lawrence
Livermore Nat'l Lab., 131 F.3d 836, 839 (9th
Cir.1997) (holding Eleventh Amendment bars
damages actions against state officials in
their official capacity).

*Liu* is unpublished and has no precedential value.  This

Court recently ruled:

The *Venegas* decision does not overturn Ninth
Circuit precedent on this issue regarding a
federal statute.  The 'ultimate issue is
whether or not California sheriffs are
subject to liability under 42 U.S.C. § 1983
when executing their law enforcement duties'
and '[t]his is an ultimate question of
federal law even though it requires
application of some principles of state law
to resolve it,' *Brockmeier,* 35 A.D.3d 1277,
825 N.Y.S.2d 390, 2006 WL 3760275, at *6.
'[T]he question of municipal liability under
section 1983 is one of federal law.' *Streit
v. County of Los Angeles*, 236 F.3d 552, 560
(9th Cir.2001) ('even if [*Peters*] were on all
fours we would not be bound by its
conclusions regarding section 1983 liability
because such questions implicate federal, not
state law.')

*Garcia v. City of Merced*, 2008 WL 115201, at *18 (E.D.Cal.2008).

Defendant County of Merced's motion to dismiss on the ground

that Defendant Spencer is not a policymaker for the County is

GRANTED.  Defendant County of Merced's motion to dismiss on the

ground that Defendant Pazin is not a policymaker for the County

is DENIED WITHOUT PREJUDICE.

b.   Custom or Policy Allegations.

Defendant Merced County argues that Plaintiff has

insufficiently plead a *Monell* claim that conclusorily alleges an unconstitutional policy or custom and provides no facts in support of this allegations.  The County asserts the same flaw with respect to the claim of failure to terminate, supervise or discipline.

It is well established in the Ninth Circuit that an allegation based on nothing more than a bare averment that the official's conduct conformed to official policy, custom or practice suffices to state a *Monell* claim under Section 1983. *See Karim Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988); *Shah v. County of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986); *Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984).  Here the complaint does allege that customs or policies of Merced County in failing to terminate, supervise, and discipline Pazin, the alleged County policymaker, resulted in the violations of Plaintiff's federal constitutional rights he has stated in his complaint.  This is all that is required to sufficiently plead a *Monell* claim.  Dismissal of Plaintiff's *Monell* claim on this ground is DENIED.[2]

---

[2]**Plaintiff further argues that, because he seeks prospective equitable relief, i.e., the expungement of his criminal record, Merced County is a proper defendant even if the constitutional violation was not the result of official policy or custom.  *See Los Angeles Police Protection League v. Gates*, 995 F.2d 1469, 1472 (9th Cir.1993): "[T]he city can be subject to prospective injunctive relief even if the constitutional violation was not the result of an 'official custom or policy.'" However, as the County contends, Plaintiff's ability to expunge his criminal record implicates *Heck v. Humphrey.*  See discussion *supra.*  The cases construing *Heck v. Humphrey* discussed above do not allow Plaintiff to obtain the expungement of his criminal record under Section 1983.  The County further contends that it is not a proper defendant for the prospective equitable relief sought by**

**2.   State Law Claims.**

Defendant Merced County argues Plaintiff's state law claims must be dismissed because Plaintiff has failed to comply with the pleading requirements of the CTCA.  As described above, Plaintiff has not alleged or demonstrated that he submitted a written claim to Merced County prior to filing his complaint as required before a California public entity may be sued.  This failure is fatal to Plaintiff's state law claims against Defendant Merced County.

Defendant Merced County's motion to dismiss is GRANTED WITH PREJUDICE as to Plaintiff's state law claims.

**D.   Defendant McKechnie's Motion to Dismiss.**

Defendant McKechnie moves to dismiss on grounds that subject matter jurisdiction is lacking because the legal malpractice claims do not arise out of a common nucleus of operative facts with respect to Plaintiff's federal claims.  He also moves to dismiss on grounds that under California 340.6, Plaintiff's claim is barred by the statute of limitations.

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), broadly authorized federal courts to exercise jurisdiction over state law claims when those claims "derive from a common nucleus of operative fact."  *Gibbs* was subsequently interpreted as conferring significant discretion of the federal courts to assert or to decline to assert jurisdiction over pendant state law claims, limited only by values of "judicial economy, fairness,

_____

Plaintiff because the County has no ability to expunge Plaintiff's criminal record.  The County cites California Government Code § 100(b): "The style of all process shall be 'The People of the State of California,' and all prosecutions shall be conducted in their name and by their authority."  At the hearing Plaintiff conceded the validity of the County's position.

convenience, and comity." See, e.g., *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).  In *Executive Software North America v. United States District Court*, 24 F.3d 1545, 1556 (9th Cir. 1994), the Ninth Circuit held:

> [U]nless a court properly invokes a section 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted.

Supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367(c), which provides, in relevant part:

> (c) The district court may decline to exercise supplemental jurisdiction over a claim . . . if:
>
> (1)  The claim raises a novel or complex issue of State law,
>
> (2)  The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  The district court has dismissed all claims over which it has original jurisdiction;  or
>
> (4)  In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here the legal malpractice claim involves McKechnie's representation of Byrd in the underlying criminal case.  There will be substantial overlap of evidence and witnesses in the adjudication of the malpractice claim because evaluating the elements of breach and causation would necessarily involve the validity of Byrd's claims of false arrest and wrongful prosecution for his criminal violations.  Similarly, McKechnie's knowledge of any prior misconduct by Teater and the identity of the purchasers of Byrd's property will be at issue in assessing breach.  In addition, the strength and outcome of the claims against the other defendants will necessarily inform the element

of causation in the malpractice claim.  As such, Byrd's claim for legal malpractice arises out of a "common nucleus of operative fact" with the federal section 1983 claims.

The Court nonetheless declines to exercise supplemental jurisdiction over Plaintiff's legal malpractice claim against McKechnie.  Section 1367(c)(4) allows the Court to do so in exceptional circumstances where there other compelling reasons for declining jurisdiction.

In *Wiley v. County of San Diego,*, 19 Cal.4th 532 (1998), the Supreme Court held that "in a criminal malpractice action actual innocence is a necessary element of the plaintiff's cause of action." 19 Cal.4th at 545.  In *Coscia v. McKenna & Cuneo*, 25 Cal.4th 1194, 1201 (2001), the Supreme Court, relying *inter alia* on *Wiley v. County of San Diego*, held:

> [A]n individual convicted of a criminal offense must obtain reversal of his or her conviction, or other exoneration by postconviction relief, in order to establish actual innocence in a criminal malpractice action.

*Coscia* further held:

> We conclude that the two-track approach ... is most consistent with the requirements of Code of Civil Procedure section 340.6, subdivision (a), and the interests of fairness to both plaintiffs and defendants in criminal malpractice actions.  Thus, the plaintiff must file a malpractice claim within the one-year or four-year limitations period set forth in Code of Civil Procedure section 340.6, subdivision (a).  Although such an action is subject to demurrer or summary judgment while a plaintiff's conviction remains intact, the court should stay the malpractice action during the period in which such a plaintiff timely and diligently pursues postconviction remedies. As explained in *Adams v. Paul* (1995) 11 Cal.4th 583, 593 ..., 'trial courts have inherent authority to stay malpractice suits, holding them in abeyance pending resolution

42

> of underlying litigation.' By this means,
> courts can ensure that the plaintiff's claims
> will not be barred prematurely by the statute
> of limitations.  This approach at the same
> time will protect the interest of defendants
> in attorney malpractice actions in receiving
> timely notice and avoiding stale claims.

**25 Cal.4th at 1210-1211.**

Plaintiff has not obtained a reversal or exoneration of his criminal conviction.  *Heck v. Humphrey* bars all of Plaintiff's Section 1983 claims, except his claim of excessive bail. Although there is a common nucleus of operative facts, those facts are not actionable because of Plaintiff's failure to obtain a reversal or exoneration of his conviction.  Plaintiff has made no representation that he intends to pursue any post-conviction remedy that may yet be available to him to invalidate his conviction.  Staying Plaintiff's claim against Defendant McKechnie under these circumstances will require Defendant McKechnie to participate in this litigation even though Plaintiff cannot now and may never be able to recover against him for legal malpractice.[3]

Defendant McKechnie's motion to dismiss is GRANTED pursuant to 28 U.S.C. § 1367(c)(4).

CONCLUSION

For the reasons stated above:

1.  Defendants' motions to dismiss are DENIED IN PART, GRANTED IN PART WITH LEAVE TO AMEND, AND GRANTED IN PART WITH PREJUDICE.

---

[3]**This is in addition to serious concerns that Plaintiff's claim of legal malpractice is barred in any event by the statute of limitations set forth in California Code of Civil Procedure § 340.6.**

1
2
3
4

     **2.   Plaintiff shall file a First Amended Complaint in accordance with the rulings made herein within 20 days of service of this Order.   Defendants shall respond within 20 days thereafter.**

5
     IT IS SO ORDERED.

6
**Dated:   February 19, 2008**           **/s/ Oliver W. Wanger**
                                UNITED STATES DISTRICT JUDGE

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28